1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   JOSEPH M. CESAR and LATSAMY L.           No.  2:14-cv-00599-KJM
     CESAR,
11
                           Appellants,
12                                            ORDER
            v.
13
     CHARTER ADJUSTMENTS
14   CORPORATION and DONALD E.
     STERNBERG,
15
                           Appellees.
16

17

18          Appellants Joseph M. Cesar and Latsamy L. Cesar's bankruptcy appeal is

19   currently pending before the court.  On July 11, 2014, the court heard oral argument on the

20   matter.  Daniel Hanecak appeared for appellants; Roy Weatherup appeared for appellee Donald E.

21   Sternberg and specially appeared on behalf of counsel Donald E. Sternberg for appellee Charter

22   Adjustments Corporation.

23          After considering the parties' papers and arguments, the bankruptcy judgment is

24   AFFIRMED.

25   /////

26   /////

27   /////

28   /////

                                          1

1    I.      BACKGROUND

2           Appellants owned a chain of clothing stores that began to fail in 2006.  App. Vol. I

3    at 57 ("Vol. I"), ECF No. 4-1.[1]  In 2007, appellants began using the equity in their home to cover

4    expenses.  *Id.*  After running out of money, appellants missed their first house payment in August

5    2008.  *Id.*

6           Before appellants filed for bankruptcy, one of appellants' creditors assigned its

7    claim against appellants to appellees.  On April 2, 2009, appellees obtained a default judgment

8    against appellants for $6,970.47.  App. Vol. II at 226–229 ("Vol. II"), ECF No. 4-2.  Appellees

9    filed an abstract of judgment on November 6, 2009.  *Id.* at 230.  The abstract of judgment was

10   recorded on March 8, 2010.  *Id.*

11          On April 29, 2010, Wells Fargo Bank foreclosed on appellants' home.  Vol. I at

12   57.  In July 2010, appellants filed a Chapter 7 petition in bankruptcy court.  *Id.* at 127–129.  The

13   petition listed appellees as unsecured creditors.  *Id.*  On October 28, 2010, attorney Frank J. Ferris

14   substituted in as attorney of record for appellants.  Vol. II at 369.  On November 16, 2010, the

15   bankruptcy trustee filed a "no-asset" report indicating there were no assets that could be

16   liquidated for the benefit of unsecured creditors.  Vol. I at 7–9.  Also on November 16, 2010, a

17   copy of appellants' discharge was mailed by the Bankruptcy Noticing Center to appellees.[2]  *Id.* at

18   10–15; *see also* Vol. II at 369 (bankruptcy case docket showing notice of filing report of no

19   distribution was transmitted to Bankruptcy Noticing Center for service).

20          Two years later, in November 2012, appellant Joseph Cesar applied for credit at

21   Macy's but was purportedly denied due to liens on the public record.  *Id.* at 59, 68–69.  On

22   December 17, 2012, after discovering appellees maintained a judgment lien against them that was

23   still on record, appellants, without the assistance of counsel, mailed a letter to appellees notifying

24   them of the discharge and requesting removal of the judgment lien and negative credit reporting.

25   _____

26          [1] References to the appendix, Volumes I and II, use the appendix page number, not the
     corresponding ECF page number.

27          [2] The Bankruptcy Noticing Center "provides a centralized process for preparing,
     producing, and sending bankruptcy court notices by mail or electronic transmission."  Electronic
28   Bankruptcy Noticing, http://ebn.uscourts.gov/ (last checked Oct. 10, 2014).

*Id.* at 71.  On December 27, 2012, appellants received a response from appellees.  *Id.* at 73.  The letter informed appellants that appellees had not reported the lien to any credit reporting agency and, unless appellant was able to go back into bankruptcy court, the abstract would remain attached to any real property appellants may own until it is satisfied by payment in full or some other satisfactory payment arrangement.  *Id.*  The letter further stated, "If you have written because you are in the process of selling or refinancing your home and that process has uncovered this lien, a resolution can be realized through a demand in escrow."  *Id.*  Finally, the letter informed appellants the amount owed, after interest, was approximately $9,000.  *Id.*

The parties continued their correspondence in early January 2013, during which time appellee made references to appellants' property and the judgment secured against it.  *Id.* at 76–86.  During this time, appellants did not inform appellees they no longer owned the real property.  Vol. II at 191.  In May 2013, counsel for appellants, Daniel Hanecak, requested appellees remove the lien from the record in light of the discharge, but also did not mention appellants no longer owned the property.  Vol. I at 93.

After reopening their bankruptcy matter, appellants' counsel, Mr. Hanecak, filed motions for expungement of the lien and sanctions against appellees for willful violation of the bankruptcy court's prior discharge order.  *Id.* at 33.  On September 23, 2013, the court denied the motion to expunge the lien because appellants no longer owned the property.[3]  *Id.* at 138–139.  The court also dismissed the motion for sanctions without prejudice due to notice defects.  Vol. II at 354.  On this same day, appellees were informed appellants' home had been sold at a foreclosure sale on April 16, 2010.  Vol. I at 138.

On November 18, 2013, appellants filed another motion for sanctions against appellees.  *Id.* at 37–55.  Appellants argued appellees' efforts at collecting the judgment lien caused appellants to suffer emotional distress.  *Id.* at 49–54.  Appellees' counsel argued he never

---

[3] While it is unclear from the record when attorney Frank J. Ferris ceased representation of appellants, the bankruptcy docket shows Mr. Ferris's representation officially terminated on September 22, 2013.  Vol. II at 338.  Counsel for appellants represented during the hearing Mr. Ferris was disbarred in early 2011.  Both parties represented to the court the instant motion is based on events in which Mr. Ferris was not involved and in which appellants or their current counsel contacted appellees.

1   received any of the motion for sanctions pleadings despite his name appearing on the proof of

2   service. *Id.* at 154. A final hearing on the sanctions motion was heard on January 13, 2014. Vol.

3   II at 305–315. The bankruptcy court recognized appellees "didn't actually know that the property

4   had been lost in a foreclosure" and did not find appellants' constructive notice argument

5   persuasive. *Id.* at 306–307. The court denied the motion and found "[t]he debtors have not met

6   their burden of persuasion – by clear and convincing evidence – that the [appellees] were

7   attempting to collect a debt to which the discharge injunction was applicable . . . or that the

8   [appellees'] actions violated the discharge injunction . . . ." *Id.* at 302.

9   II.     LEGAL STANDARD

10          A district court may "affirm, modify, or reverse a bankruptcy judge's judgment,

11   order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

12   The court reviews "'the bankruptcy court's findings of fact under the clearly erroneous

13   standard[,] . . . its conclusions of law de novo,'" *Clinton v. Acequia, Inc.* (*In re Acequia, Inc.*),

14   787 F.2d 1352, 1357 (9th Cir. 1986) (quoting *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.

15   1986)), and "[m]ixed questions of law and fact . . . de novo." *Beaupied v. Chang* (*In re Chang*),

16   163 F.3d 1138, 1140 (9th Cir. 1998). Rulings regarding issue preclusion are mixed questions of

17   law and fact, in which legal issues predominate. *Khaligh v. Hadaegh* (*In re Khaligh*), 338 B.R.

18   817, 823 (9th Cir. B.A.P. 2006).

19          "'A finding is "clearly erroneous" when although there is evidence to support it,

20   the reviewing court on the entire evidence is left with the definite and firm conviction that a

21   mistake has been committed.'" *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting

22   *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Greene v. Savage* (*In re

23   Greene*), 583 F.3d 614, 618 (9th Cir. 2009).

24          This court may affirm on any ground supported by the record. *Thrifty Oil Co. v.

25   Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

26   /////

27   /////

28   /////

4

III.    ANALYSIS

    A.    The Bankruptcy Judgment

        In the  judgment filed January 13, 2014, the bankruptcy judge first notes that while appellants argued the lien "somehow prevented them from getting new credit . . . there is no convincing proof that they were denied credit because of the nonexistent lien."  Vol. II at 301. The bankruptcy judge continues:

> [Appellees] have shown that their continued demand for payment was based on the mistaken belief that [appellants] still owned their home and they desired to remove [appellees'] lien from it. Neither [appellants] nor their counsel told [appellees] that the property had been lost in a prebankruptcy foreclosure. [Appellees] claim, and the court accepts, that they were merely negotiating the satisfaction of the in rem liability represented by the lien, without knowledge that there was no longer such liability because the property had been lost in a foreclosure. The court is persuaded that [appellees] were not attempting to collect on the discharged in personam liability.

*Id.*

        With regard to appellants' argument appellees had constructive notice that the property had been foreclosed upon, the bankruptcy judge found persuasive appellees' argument that they "thought they were negotiating the in rem liability on the lien" and did not know the property had been foreclosed upon.  *Id.* at 301–302.  The bankruptcy court stated "[i]t is clear from the record before the court that neither [appellants] nor counsel for [appellants] informed [appellees] during their negotiations of the foreclosure."  *Id.* at 301.

        The bankruptcy judge also rejected appellants' argument that appellants' original schedules filed with the bankruptcy petition served as notice of the foreclosure, finding "there is no evidence that these schedules were served on [appellees]."  *Id.* at 302.

        Finally, the bankruptcy judge found the amended summary of schedules did not serve as notice of the foreclosure.  The bankruptcy court explains:

> The debtors amended their Schedules B, C and F and the Summary of Schedules on September 10 and 13, 2010. Dockets 25 and 26. The Amended Summary of Schedules and Amended Schedules C and F were served on the creditors, including CAC, on September 24, 2010. Docket 27. However, there was no service on the respondents of Schedule A or an Amended Schedule A, letting them know that the debtors no longer owned a real property. And,

while the Amended Summary of Schedules lists as $0.00 the real property assets in Schedule A, Amended Schedule C lists an exemption in a real property − "single family home, 2200 sqft." − claimed as exempt pursuant to Cal. Civ. Proc. Code § 704.730(a)(2) in the amount of $100,000.

At best, then, the Amended Schedule C and the Amended Summary of Schedules served on CAC are confusing and contradictory on their face as to whether the debtors still owned the property during the pendency of the bankruptcy case.

*Id.*

The bankruptcy judge concluded appellants "have not met their burden of persuasion – by clear and convincing evidence – that [appellees] were attempting to collect a debt to which the discharge injunction was applicable (i.e., were attempting to collect on in personam rather than in rem liability) or that the respondents' actions violated the discharge injunction, as the collection of in rem liability is not subject to the discharge injunction." *Id.* (citing *Zilog, Inc. v. Corning* (*In re Zilog, Inc.*), 450 F.3d 996, 1007 (9th Cir. 2006)).

B.      The Appeal

Appellants appeal the bankruptcy judgment, arguing appellees were on notice of the foreclosure and therefore knew the discharge injunction was applicable to their claim because it precludes in personam collection efforts.  In other words, if appellants knew about the foreclosure and continued to attempt to collect a debt, appellees posit that attempt should be construed as an in personam collection, which is precluded by the discharge injunction.  As a result, appellants argue, appellees violated the discharge injunction by attempting to collect an in personam debt.

In opposition, appellees argue they knew of the discharge injunction but did not believe it was applicable to their actions because they were operating under the assumption appellants still owned the property and so appellees could pursue in rem relief to enforce the lien. Appellees argue their actions were not willful because they were unaware of the foreclosure and were simply exercising their rights under 11 U.S.C. § 524(j).  ECF No. 16 at 29–30.  Thus, appellees conclude, their actions in attempting to collect in exchange for removing the lien were not barred by the discharge injunction.

6

i.    Legal Standards Governing Sanctions for Violating a Discharge Injunction

A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any . . . debt [subject to such discharge] as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).

The Bankruptcy Code, however, does not provide a private right of action to a debtor when a creditor violates the discharge injunction.  "A willful violation of the automatic stay provision may yield a bankruptcy claim for damages."  *Wan v. Discover Fin. Servs., Inc.*, 324 B.R. 124, 127 (N.D. Cal. 2005) (citing 11 U.S.C. § 362(h)).  "A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code."  *In re Zilog, Inc.*, 450 F.3d at 1007 (citing *Renwick v. Bennett* (*In re Bennett*), 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002)).

Section 105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).

The Ninth Circuit has explained:

> "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted). As discussed by the Eleventh Circuit in [*Hardy v. United States*], to justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *See* [*Hardy v. United States* (*In re Hardy*), 97 F.3d 1384, 1390 (11th Cir. 1996)] (citing *Jove Eng'g, Inc. v. Internal Revenue Service*, 92 F.3d 1539, 1555 (11th Cir. 1996)).

*In re Bennett*, 298 F.3d at 1069.

*/////*

7

ii.      Whether Appellees Knew the Discharge Injunction was Applicable

In order for a creditor to be held in contempt for a violation of the discharge injunction, a debtor must show by clear and convincing evidence that the creditor knowingly violated the discharge order.  *In re Azevedo*, 506 B.R. 277, 282 (Bankr. E.D. Cal. 2014) (citing *In re Bennett*, 298 F.3d at 1069).  "But the creditor does not violate the discharge order unless the order applies to the creditor's claim."  *Id.*  Thus, this factor requires that appellees actually knew the discharge injunction was applicable to their actions.  *Id.* at 285.

Here, appellees knew of the discharge injunction.  On November 16, 2010, appellees were served by the Bankruptcy Notice Center with the notice of appellants' discharge.  Vol. I at 10–15; Vol. II at 368.  Appellees have not disputed receiving notice of the discharge.  The issue before the court is whether appellees knew of the April 29, 2010 foreclosure on appellants' property such that they knew the discharge injunction was applicable to their claim.

The court must first consider whether a lien on a property survives a discharge injunction such that the discharge injunction applies to appellant's actions here.

11 U.S.C. § 524(j) provides:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if--
>
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
>
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
>
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

"Although the discharge eliminates a debt as a personal liability, it does not affect a lien that provides security for the debt."  *Henry v. Assocs. Home Equity Servs., Inc.* (*In re Henry*), 266 B.R. 457, 474 (C.D. Cal. 2001) (citing 11 U.S.C. § 522(c)(2)).

In this action, appellees obtained a judgment and subsequently a lien on appellants' principal residence prior to appellants' Chapter 7 bankruptcy and discharge injunction.  When appellants contacted appellees several years later, appellees sought to obtain

1  payment associated with the security interest in lieu of pursuit of in rem relief to enforce the lien.

2  Thus, assuming the property had not been foreclosed on, appellees would not have violated the

3  discharge injunction by pursuing payment in lieu of pursuing in rem relief because it did not

4  apply to them.  *In re Henry*, 266 B.R. at 474 ("A chapter 7 discharge extinguishes only one mode

5  of enforcing a claim, an action in personam against the debtor.  It leaves intact the right to

6  proceed in rem against the property." (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83

7  (1991))).  However, in this action, appellants no longer owned the property after the April 29,

8  2010 foreclosure.  Appellants set forth a number of arguments in support of their contention

9  appellees willfully or knowingly violated the discharge injunction because they were aware of the

10  foreclosure.

11        First, appellants argue appellees had constructive notice of the foreclosure of

12  appellants' property through public records such that their actions violated  the discharge

13  injunction, which prohibits efforts to recover any debt as a personal liability of the debtor.  ECF

14  No. 4 at 19–21.  Appellants argue a notice of trustee's sale for the property was recorded five

15  days before appellees' abstract of judgment was recorded on March 8, 2010, Vol. II at 230, and

16  "[i]t is only logical that Appellees conducted further investigation into whether or not Appellants'

17  home sold and if surplus proceeds remained from the sale."  ECF No. 4 at 20.  Appellants further

18  argue:

19        The bankruptcy court found that Appellees did not have notice of
       the foreclosure.  However, Appellees' actions circa the foreclosure
20       sale demonstrate this to be a clearly erroneous interpretation.  First,
       Appellees admit learning of Appellants' business closure in 2010.
21       (Vol. II, App. 27, p. 189:19-22.)   Searching to seize any of
       Appellants' remaining assets, Appellees discovered Appellants
22       owned a home and recorded their judgment on March 8, 2010, three
       months after the December 1, 2009 Notice of Default and one
23       month prior to the April 16, 2010 trustee's sale. (Vol. II, App. 38,
       p.299, ¶3; p. 300, ¶1.)  Appellees admit knowing a lien against a
24       home lost in foreclosure is "invalid." . . . Hence, filing the judgment
       while Appellants' home was in foreclosure was a strategic move to
25       intercept any surplus escrow proceeds.   These actions clearly
       demonstrate Appellees had knowledge of the pending sale.
26

27  ECF No. 18 at 17–18.  Nothing in appellants' arguments points to actual knowledge of the

28  foreclosure.  That appellees learned of appellants' business closure, recorded their judgment on

appellants' personal property one month before the trustee's sale and are aware a lien against a foreclosed home is invalid does not provide a basis for a finding that appellees were on notice of the foreclosure. *See, e.g.*, *In re Zilog, Inc.*, 450 F.3d at 1009 n.14 ("To the extent that the deficient notices led the [employees] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness."); *see also Nash v. Clark Cnty. Dist. Attorney's Office* (*In re Nash*), 464 B.R. 874, 880 (9th Cir. BAP 2012) (no abuse of discretion in declining to award sanctions because creditors did not acknowledge discharge injunction was applicable to their claim).  Nor does appellants' argument that "it is only logical" that appellees conducted further investigation regarding the property, ECF No. 4 at 20, rise to the threshold of clear and convincing evidence appellees knew of the foreclosure and the applicability of the discharge injunction to their claim.  None of appellees' actions demonstrates knowledge of the foreclosure or the sale of the property.  Rather, appellees' actions after appellants contacted them in 2012 demonstrate a lack of knowledge of the foreclosure.  *See* Vol. I at 73 (letter informing appellants of their options if they are trying to sell the property, which signals appellees' belief the property was still owned by appellants).  As the bankruptcy judge observed during the court's hearing on the matter:

> There was nothing indicating that the property had been lost in a foreclosure.  I was reading those e-mails, and it sounded to me like someone was asking, get this lien off my property, that he didn't own anymore.  That was the part that didn't seem to be verbalized by anybody while these e-mails were going back and forth.  And had it been and then a demand for money was made, if I saw something that was communicated to Mr. Sternberg or his client that said, "Look, we lost this property in a foreclosure.  We want to buy new property and this lien is creating a problem," and then they still ask for money, now we are talking about something, but I didn't see that.

Vol. II at 309–310.

The court questioned appellants' counsel during the hearing regarding the notice of trustee sale, which appellants argue put appellees on constructive notice of the foreclosure five days before the abstract of judgment was recorded.  *See* ECF No. 4 at 20.  The court provided

////

10

counsel an opportunity to submit a copy of the notice and counsel submitted it the same day.[4] The notice of trustee's sale provided by appellants is dated March 2, 2010, but does not feature a recording date.  Thus, the notice fails to establish it was in fact recorded before appellee's abstract of judgment was recorded on March 8, 2010.  Vol. II at 230.  Appellants also provided a notice of default that was recorded on December 1, 2009.  However, the notice of default only states appellants' property may be sold and appellants may have a legal right to bring their account into good standing by paying all past due payments.  It does not say that the property would in fact be sold as a result of foreclosure.  Finally, the "trustee's deed upon sale" provided by appellants shows it was recorded on April 29, 2010, fifty-two days after appellees' abstract of judgment was recorded on March 8, 2010.  Nothing in the record or the subsequent documents provided by appellants establishes a notice regarding the foreclosure was recorded prior to appellee's abstract of judgment being recorded on March 8, 2010.  Accordingly, appellees were not made aware of the foreclosure such that they had knowledge the discharge injunction applied to them and knowingly or willfully violated it.[5]

Second, appellants' argument that appellees failed to conduct due diligence and "bulldozed forward with their collection attempts with a reckless disregard," ECF No. 18 at 19, is not persuasive.  Appellants argue the bankruptcy court fails "to point to any authority that addresses the issues of due diligence and why Appellants would be required to put Appellees on notice of a foreclosure sale despite already having provided multiple notices of the bankruptcy and the discharge."  ECF No. 4 at 23.  Here, appellees did not send written communications to

---

[4]  In light of the court's reliance on appellants' submission, the court has determined the documents should be filed on the docket.  Appellants shall have seven days from the date of this order to file objections to the court's plan to file the documents on the docket.  If no objections are received, the documents will be filed by the Clerk of the Court.

[5]  The court questioned appellants' counsel during the hearing regarding their argument "[t]he public record constitutes constructive notice to [a]ppellees that [a]ppellants' real property sold and their lien became unsecured" based on California Civil Code section 1213.  ECF No. 4 at 19; *see* CAL. CIV. CODE § 1213 ("Every conveyance of real property . . . from the time it is filed with the recorder is constructive notice of the contents thereof to subsequent purchasers and mortgagees . . . .").  Appellants' counsel represented he could not find case law addressing whether notice is governed by state law.  Nevertheless, nothing in the record supports a finding notice of the foreclosure was in fact recorded prior to appellee's abstract of judgment being recorded on March 8, 2010.  The court need not address whether the notice of trustee's sale provided constructive notice of the foreclosure under state law.

1   appellants seeking payment.  Rather, appellants contacted appellees several years after the

2   discharge injunction issued seeking removal of the lien; and appellees made an effort to negotiate

3   the removal with appellants.  The miscommunication between the parties is clear: appellees did

4   not discuss the foreclosure because they were concerned with their credit, and appellants did not

5   inquire as to the status of the property because they assumed appellees were contacting them in an

6   effort to remove a lien on a property they still owned and were possibly trying to sell.

7   Appellants' argument, however, that "it is more reasonable to hold a debt collector responsible to

8   ask the debtor if they still owned their pre-bankruptcy home than the debtor to fish for the debt

9   collector's intent," is not persuasive.  ECF No. 18 at 19–20.  Both parties failed to communicate

10  clearly their intentions or assumptions at some level, but that does not lead to a finding that

11  appellees should be sanctioned simply by failing to inquire as to the status of appellants' property

12  when appellants could just have easily communicated this information to appellees during their

13  discussions.  *See, e.g.*, *Ellis v. Dunn* (*In re Dunn*), 324 B.R. 175, 179–80 (D. Mass. 2005)

14  (rejecting the argument that knowledge of the discharge amounted to inquiry notice, which

15  imposed a duty to learn the scope of the order), *cited in In re Azevedo*, 506 B.R. at 284.

16  Moreover, as the bankruptcy judge noted, notices of the discharge injunction do not equate to a

17  notice of the foreclosure.  *See* Vol. II at 302 (explaining how "the Amended Schedule C and the

18  Amended Summary of Schedules served on [appellees] are confusing and contradictory on their

19  face as to whether [appellants] still owned the property during the pendency of the bankruptcy

20  case").

21          Third, appellants argue appellees' contention "they were unaware of the

22  foreclosure sale and the bankruptcy, which means that any acts were done in good faith and

23  without intent," "'is not a defense against a motion for contempt.'"  ECF No. 4 at 24 (quoting

24  *Jarvar v. Title Cash of Mont., Inc.* (*In re Jarvar*), 422 B.R. 242, 172 (Bankr. D. Mont. 2009)).

25  However, the case appellants cite also states, "[k]nowledge of the discharge order and knowingly

26  violating it are necessary requirements for contempt."  *Jarvar*, 422 B.R. at 250 (citation and

27  internal quotations omitted).  Appellants also cite *Espinosa v. United Student Aid Funds, Inc.*, 553

28  F.3d 1193 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010), in support of their argument that

1    "'[i]ntent,' in the context of a discharge injunction, does not mean intent to violate the discharge

2    injunction, but only intent to commit the actions that violate the discharge."  ECF No. 4 at 24

3    (emphasis omitted).  Appellants' citation is misleading.  It is true the *Espinosa* court noted the

4    party seeking contempt sanctions must prove by clear and convincing evidence the creditor

5    "intended the actions which violated the injunction."  *Espinosa*, 553 F.3d at 1205 n.7 (quoting *In*

6    *re Zilog, Inc.*, 450 F.3d at 1007).  But in the very same sentence, the court also noted the moving

7    party must prove the creditor "knew the discharge injunction was applicable."  *Id.*  As the

8    bankruptcy court found in its final hearing, appellees had neither actual nor constructive

9    knowledge appellants' home had been lost in foreclosure.  Vol. II at 306–307.  Appellees' actions

10   do not amount to "disregard" of the discharge injunction, as appellants attempt to characterize

11   them.  ECF No. 4 at 24.  Appellants could not have knowingly violated the discharge injunction

12   without first knowing the injunction was applicable to the judgment lien.  Appellants could not

13   have known the injunction was applicable without knowledge of the foreclosure.  Appellees have

14   not proven appellants knew of the foreclosure such that they knew the discharge injunction was

15   applicable.

16          This is not a case where, for example, appellees knew of the foreclosure and

17   continued to negotiate with appellants under a good faith assumption the discharge injunction did

18   not apply to their claim.  Rather, appellants did not know of the foreclosure and therefore

19   operated under the mistaken assumption the discharge injunction did not apply to them.

20          Appellants fail to show by clear and convincing evidence that appellees knowingly

21   or willfully violated a specific and definite order of the court, such that they should be held in

22   contempt under section 105(a) of the bankruptcy code.  The court is not "left with the definite and

23   firm conviction that a mistake has been committed.'"  *Anderson*, 470 U.S. at 573.  Because the

24   first factor is dispositive of the court's analysis, the court does not address the second intent

25   factor.

26   IV.    CONCLUSION

27          IT IS HEREBY ORDERED that within seven days from the date of this order,

28   appellants shall file objections, if any, to the filing of the documents submitted to the court

13

following the July 11, 2014 hearing.  If no objections are received, the documents will be filed by the Clerk of the Court.

IT IS FURTHER ORDERED the bankruptcy judge's judgment denying appellants' motion for sanctions is AFFIRMED.

Dated:  October 10, 2014.

_____
UNITED STATES DISTRICT JUDGE